UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
STONE EQUITIES, LLC,

                    Plaintiff,

        -against-

TOWN OF BROOKHAVEN, THERESA
TREJO, AMANDA PACCIONE, and BRIAN
SMITH,

                    Defendants.
--------------------------------X

FILED
CLERK

5/28/2026 1:41 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

MEMORANDUM & ORDER
25-cv-5237 (JS) (JMW)

APPEARANCES
For Plaintiff:      Aaron C. DePass, Esq.
                    Law Office of Aaron C. DePass
                    300 Cadman Plaza West, 12th Floor
                    Brooklyn, New York  11201

For Defendants:     Alexander Sendrowitz, Esq.
                    Quatela Chimeri, PLLC
                    888 Veterans Memorial Highway, Suite 530
                    Hauppauge, New York  11788

SEYBERT, District Judge:

         Presently before the Court is a partial motion to dismiss the Complaint of Plaintiff Stone Equities, LLC ("Plaintiff") pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim ("Motion") filed by Defendants Town of Brookhaven ("Brookhaven" or the "Town"), Theresa Trejo, Amanda Paccione, and Brian Smith (collectively, "Individual Defendants"; together with the Town, "Defendants"). (See Motion, ECF No. 13.)  In relevant part, the Complaint alleges Defendants unlawfully violated Plaintiff's rights to procedural and substantive due process and equal protection under the Fourteenth Amendment, as well as

conspired with local law enforcement to unlawfully seize certain properties owned by Plaintiff in violation of 42 U.S.C. § 1983 ("Section 1983").  (See Compl., ECF No. 1, ¶¶ 56-64, 70-71.)  For the reasons explained herein, Defendants' Motion is GRANTED in its entirety.

BACKGROUND

I.   Factual History[1]

Plaintiff has owned several commercial real estate properties in the Town for more than twenty years.  (See id. at ¶ 2.)  This includes the properties located at 1070 Middle Country Road, in Selden, New York, and 2373 Middle Country Road, in Centereach, New York (jointly, the "Subject Properties").  (See id. at ¶ 10.)  The Subject Properties are located within the Town, a municipality within Suffolk County, New York.  (See id. at ¶ 11.)  Prior to September 23, 2022, Plaintiff lawfully leased the Subject Properties to spa services businesses owned and operated by individuals of Asian descent.  (See id. at ¶¶ 3, 18.)

At all times relevant to the Complaint, the Town employed Trejo as a building inspector, Paccione as a Town investigator, and Smith as a fire marshal.  (See id. at ¶¶ 12-14.)  Trejo and Paccione were "responsible for the just and fair administration of

---

[1] The following facts are drawn from Plaintiff's Complaint and are accepted as true to the extent necessary to resolve the instant Motion.

services and violations" for the Town.  (Id. at ¶¶ 12-13.)  Smith was similarly responsible for the "just and fair administration of building code safety" for the Town.  (Id. at ¶ 14.)

On or about September 23, 2022, the Individual Defendants, acting as employees of the Town, visited the Subject Properties with the Suffolk County Police Department ("SCPD") to investigate local Asian-owned spa businesses' "quality of life." (Id. at ¶ 17.)  Before entering the Subject Properties, the Individual Defendants "conspired" and "spoke with" unnamed officers of the SCPD and formulated a plan to "shut down" Asian-owned spa businesses.  (Id. at ¶ 23.)  Thus, Defendants conducted a "sham investigation," and without just cause or due process of law, ordered Plaintiff's tenants to cease and desist occupancy, summarily condemned the Subject Properties, and issued violations to Plaintiff stemming from the condemnations.  (Id. at ¶¶ 19-20, 22.)  No emergency or exigent circumstances existed to permit Defendants' conduct.  (See id. at ¶ 26.)  Nor were the Subject Properties in such disrepair to warrant condemnation and immediate removal of the properties' occupants.  (See id.) Instead, Defendants and the SCPD used "subterfuge" and pretextual quality of life investigations to immediately close spa businesses within the Town lawfully owned and operated by individuals of Asian descent.  (Id. at ¶ 22.)

Moreover, Defendants did not afford Plaintiff procedural due process protections, such as a pre-deprivation hearing, before seizing the Subject Properties. (See id. at ¶ 27.) The Complaint does not indicate whether any post-deprivation procedural due process protections were available to Plaintiff. (See id., in toto.) Defendants also did not adhere to any Town code provisions regarding the emergency removal of the Subject Properties' occupants. (See id.) As such, the Town failed to properly train, supervise, or control the Individual Defendants. (See id. at ¶¶ 28, 36.) The Town further maintained a policy and custom of authorizing, encouraging, or otherwise tolerating employees, such as the Individual Defendants, to engage in illegal and biased administration of laws and services, which violated Plaintiff's Constitutional and statutory rights. (See id. at ¶¶ 29-30, 36-40.)

All violations brought by the Town against Plaintiff were subsequently dismissed in an action before the New York State District Court, County of Suffolk, Sixth District. (See id. at ¶ 21.) As a result of Defendants' conduct, Plaintiff lost use of the Subject Properties for more than a year, rental income for more than two years, and a more than 15-year-long business relationship with a tenant of one of the Subject Properties. (See id. at ¶¶ 24, 44.) Plaintiff also incurred legal and business expenses stemming from Defendants' improper and unlawful actions. (See id.)

4

II.  Procedural History

Plaintiff commenced this action against Defendants on September 18, 2025.  (See generally Compl.)  In response to the Complaint, on January 19, 2026, Defendants filed a fully briefed partial Motion to Dismiss Plaintiff's third, fourth, and sixth causes of action in the Complaint that allege violation of due process, conspiracy under Section 1983, and violation of equal protection, respectively.[2]  (See generally Motion.)

## DISCUSSION

I.  Applicable Law Governing a Motion to Dismiss
    Under Rule 12(b)(6)

A cause of action is properly dismissed pursuant to Rule 12(b)(6) where it "fail[s] to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion, courts must "accept as true all factual allegations contained in the Complaint and draw all inferences in plaintiff's favor."  Glob. Network Commc'ns, Inc. v. City of N.Y., 458 F.3d 150, 154 (2d Cir. 2006).  A complaint must allege "enough

---

[2] Before filing the Motion, Defendants properly submitted a request for pre-motion conference ("PMC Request"). (See PMC Request, ECF No. 8.) In Defendants' PMC Request, they sought to move to dismiss Plaintiff's third, fourth, and sixth causes of action, as well as Plaintiff's seventh cause of action for tortious interference with contract and business relations in violation of New York state law. (See id.) Defendants argued Plaintiff's state law claims were time-barred. (See id.) In response to Defendants' PMC Request, Plaintiff voluntarily abandoned its seventh cause of action. (See Response to PMC Request, ECF No. 9.)

5

facts to state a claim to relief that is plausible on its face." Basile v. Levittown United Tchrs., 17 F. Supp. 3d 195, 200 (E.D.N.Y. 2014) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Although a complaint facing dismissal under Rule 12(b)(6) need not include detailed factual allegations, a plaintiff must articulate the grounds of its entitlement to relief beyond mere "labels and conclusions." Twombly, 550 U.S. at 555. "[A] formulaic recitation of the elements of a cause of action" is insufficient. Id. Thus, a pleading supported only by legal conclusions disguised as facts cannot survive a motion to dismiss. See Garcia v. Paylock, No. 13-CV-2868, 2014 WL 298593, at *4 (E.D.N.Y. Jan. 28, 2014) (citation omitted); Iqbal, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

A court's evaluation of a motion to dismiss under Rule 12(b)(6) is limited to the following: (1) factual allegations in the complaint; (2) documents attached as an exhibit or incorporated by reference into the complaint; (3) matters of which judicial notice may be taken; and (4) documents "upon whose terms and effect the complaint relies heavily, i.e., documents that are 'integral' to the complaint." D.C. v. Copiague Union Free Sch. Dist., No. 16-CV-4546, 2017 WL 3017189, at *3 (E.D.N.Y. July 11, 2017).

II.   Analysis

   A. Substantive Due Process

      No state shall "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. This guarantee protects an individual's rights to procedural and substantive due process.   See Shea v. Town of Brookhaven, No. 21-CV-5696, 2026 WL 948364, at *10 (E.D.N.Y. Apr. 8, 2026). "To state a claim for a violation of substantive due process, a plaintiff must allege (1) a valid liberty or property interest and (2) that defendants infringed on that interest in an arbitrary or irrational manner."   20 Dogwood LLC v. Vill. of Rosyln Harbor, No. 23-0930, 2024 WL 1597642, at *1 (2d Cir. Apr. 12, 2024) (citing Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of City of N.Y., 746 F.3d 538, 545 (2d Cir. 2014)).   Substantive due process protects against constitutionally arbitrary, conscience-shocking, or oppressive government action, but not against incorrect or ill-advised government actions.   Cunney v. Bd. of Trs. of Vill. of Grand View, N.Y., 660 F.3d 612, 625 (2d Cir. 2011).   Thus, substantive due process guards against the government's wholly unreasonable exercise of power "in the service of a legitimate governmental objective."   Tenenbaum v. Williams, 193 F.3d 581, 600 (2d Cir. 1999).

      The scope of substantive due process is limited to claims that do not have "an explicit textual source of constitutional

7

protection." Hu v. City of N.Y., 927 F.3d 81, 103 (2d Cir. 2019) (internal quotation marks omitted) (citing Albright v. Oliver, 510 U.S. 266, 273 (1994)).  Hence, whenever possible, a court must assess a plaintiff's claim against prohibited government action under a specific Constitutional provision, not the broader notion of substantive due process.  See Hu, 927 F.3d at 104 (quoting Southerland v. City of N.Y., 680 F.3d 127, 142-43 (2d Cir. 2012)); see also Velez v. Levy, 401 F.3d 75, 94 (2d Cir. 2005).

Here, Plaintiff alleges Defendants' condemnation of the Subject Properties violated Plaintiff's substantive due process rights as guaranteed by the Fourteenth Amendment to the Constitution.  Plaintiff also expressly alleges causes of action for illegal search and seizure and "illegal taking" in violation of the Fourth and Fifth Amendments, respectively.  (Compl. ¶¶ 45-54.)  These claims rest on the same factual allegations that Defendants unlawfully condemned and seized the Subject Properties to target and shut down Asian owned and operated spa businesses, thereby harming Plaintiff and depriving it of its rights to the Subject Properties.

Accordingly, Plaintiff's substantive due process allegations are subsumed by, and should instead be analyzed under, the more particular claims in the Complaint alleging unlawful takings, search, and seizure in violation of the Fourth and Fifth

Amendments to the Constitution.[3]  See Tenenbaum, 193 F.3d at 600 (affirming dismissal of substantive due process claim because it must instead be analyzed as a Fourth Amendment unlawful search and seizure claim); 31 Alanson Lane v. Town of Southampton, No. 23-CV-8938, 2026 WL 414716, at *10 (E.D.N.Y. Feb. 15, 2026) (dismissing substantive due process claim because the same factual allegations stated a plausible claim against the defendants for a violation of the Fifth Amendment Takings Clause); 20 Dogwood LLC, 2024 WL 1597642, at *1 (affirming dismissal of plaintiffs' substantive due process claims as subsumed by other more particularized Constitutional claims because the alleged "shocking" conduct was defendants' intent to violate plaintiffs' equal protection rights).  Therefore, Defendants' motion to dismiss Plaintiff's substantive due process claim is GRANTED.

B. Procedural Due Process

To state a claim for violation of procedural due process, a plaintiff must establish: (1) a property right; (2) the government has deprived the plaintiff of that right; and (3) the deprivation was effected without due process.  See Viteritti v. Inc. Vill. of Bayville, 918 F. Supp. 2d 126, 132 (E.D.N.Y. 2013). To determine whether a deprivation of property occurred without

---

[3] Defendants' Motion does not challenge the Complaint's first and second causes of action alleging violations of Plaintiff's Constitutional rights against unlawful takings, search, and seizure.

due process, courts distinguish between "(a) claims based on established state procedure and (b) claims based on random, unauthorized acts by state employees." Palmer v. City of N.Y., 564 F. Supp. 3d 221, 247 (E.D.N.Y. 2021) (internal quotation marks omitted) (quoting Rivera-Powell v. N.Y.C. Bd. of Elections, 470 F.3d 458, 465 (2d Cir. 2006)).

If the state's conduct at issue is random and unauthorized, "the state satisfies procedural due process requirements so long as it provides meaningful post-deprivation remedy." Viteritti, 918 F. Supp. 2d at 132. Thus, if a plaintiff's allegations stem from "'a random act by a state actor,' then the availability of a post-deprivation remedy, such as an Article 78 proceeding, 'is dispositive' of [plaintiff's] procedural due process claim." Id. at 133; see also Hellenic Am. Neighborhood Action Comm. v. City of N.Y., 101 F.3d 877, 882 (2d Cir. 1996) ("there is no constitutional violation (and no available [Section] 1983 action) when there is an adequate state post[-]deprivation procedure to remedy a random, arbitrary deprivation of property or liberty").

However, if the deprivation at issue occurs pursuant to an established state procedure (i.e., a statute, code, regulation, or custom), the state can predict when the deprivation will occur and is, thus, able to provide a pre-deprivation hearing. Viteritti, 918 F. Supp. 2d at 133-34. Even if a government actor

10

acts contrary to state law, such conduct is not considered random and unauthorized if the state gave those actors the power and authority to make the decision that caused the complained-of deprivation.  See id.; see also Shea, 2026 WL 948364, at *25. Further, "the acts of high-ranking officials who are ultimate decision-makers and have final authority over significant matters, even if those acts are contrary to law, should not be considered random and unauthorized conduct for purposes of a procedural due process analysis."  Viteritti, 918 F. Supp. 2d at 133.  In such cases, the availability of post-deprivation procedures will not necessarily satisfy due process.  Id.

The Complaint identifies the Individual Defendants' job titles and alleges that, as employees of the Town, the Individual Defendants were responsible for its "just and fair administration" of services, violations, and building code safety.  That is the extent of the allegations in the Complaint detailing the Individual Defendants' job duties and responsibilities related to the condemnation of commercial buildings or the issuance of Town code violations.  Beyond simply asserting the Individual Defendants did not comply with unidentified Town code provisions and used "subterfuge" and "sham" investigations to "improper[ly]" condemn and vacate the Subject Properties, the Complaint does not allege how the Individual Defendants accomplished their supposed unlawful conduct.  The Complaint also fails to articulate whether the

Individual Defendants were high-ranking officials or decision-makers with the authority to order the condemnation of the Subject Properties, or if they were simply lower-level employees who "arrived at the [Subject Properties] and completed their work assignment." Viteritti, 918 F. Supp. 2d at 133-34. Even construing the facts in the light most favorable to Plaintiff and accepting them as true, the Complaint's allegations fail to indicate the Individual Defendants carried out "established state procedures" or had the power or authority to condemn the Subject Properties.

Likewise, the vague, conclusory assertion the Town had a "policy and custom" of permitting employees to illegally and prejudicially "administ[er] [] laws and services" also lacks factual support plausibly asserting Plaintiff's entitlement to pre-deprivation due process. Cf. Palmer, 564 F. Supp. 3d at 240 (dismissing Section 1983 claim because plaintiff's allegation the city "created a policy or custom under which unconstitutional practices occurred" was insufficient, "[t]hreadbare," and unsupported by factual allegations (internal quotation marks omitted)) (quoting Iqbal, 556 U.S. at 678-79).

In Plaintiff's memorandum of law in opposition to the Motion ("Opposition"), Plaintiff alleges--for the first time, in an unsworn, conclusory manner--the condemnation of the Subject Properties stemmed not from a random or unauthorized act, but from

12

"coordinated, intentional conduct by Town officials acting pursuant to municipal authority." (Opp'n, ECF No. 14-2, at p. 3.) Thus, Plaintiff contends it was entitled to pre-deprivation due process protections. (See id.) But Plaintiff did not assert these allegations in the Complaint, and it cannot now "amend [its] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss." Churaman-Jadoo v. Daniels, No. 23-CV-8482, 2025 WL 2614943, at *4 (E.D.N.Y. Sept. 10, 2025) (citation and internal quotation marks omitted). As such, there are no allegations properly before the Court plausibly asserting Defendants acted pursuant to established state "statute, code, regulation, or custom" or a "decision made by a high-ranking official with 'final authority over significant matters.'" Viteritti, 918 F. Supp. 2d at 133-34. In the absence of such requisite allegations, Plaintiff is unable to show it was entitled to a pre-deprivation hearing before Defendants allegedly condemned and seized the Subject Properties.[4]

---

[4] At the motion to dismiss stage, the Court does not have the benefit of evaluating a record more fully developed by discovery. Thus, confined by the allegations in the Complaint at the motion to dismiss stage, the Court cannot conclude Defendants' actions were taken pursuant to established state procedure. Contra Shea, 2026 WL 948364, at *26 (although plaintiff did not allege the officials were final policymakers, the court found, at the summary judgment stage, that municipal records and deposition testimony showed officials condemned the property pursuant to established state procedures).

The Court now examines whether Plaintiff was provided with sufficient post-deprivation process. Although the Complaint explicitly asserts Defendants did not afford Plaintiff a pre-deprivation hearing, the Complaint fails to allege what, if any, post-deprivation process was available to Plaintiff after Defendants condemned the Subject Properties. But as the parties agree in their Motion papers, Plaintiff commenced an Article 78 proceeding against Defendants on or around January 6, 2023, in New York State Supreme Court, County of Suffolk. See Support Memo, ECF No. 13-5, at p. 6; Opp'n at p. 3. In New York, "an Article 78 proceeding is sufficient post-deprivation process for an unauthorized deprivation of property." G.I. Home Dev. Corp. v. Weis, No. 11-4359, 2012 WL 4679331, at *2 (2d Cir. Oct. 4, 2012) (citing Hellenic Am. Neighborhood Action Comm., 101 F.3d at 881). Yet, Plaintiff voluntarily discontinued the Article 78 proceeding and now alleges in its Opposition the proceeding "did not cure the lack of due process at the time of the deprivation" nor provided Plaintiff a meaningful opportunity to be heard. See Opp'n at p. 3. Although Plaintiff's counsel claims they "participated in every aspect of the Article 78 proceeding," counsel does not detail any of the proceeding's purported inadequacies in the Complaint. Id. Again, Plaintiff asserts new "facts" in its Opposition with no declaration, affirmation, or affidavit to accompany them. Any extra-pleading factual allegations proffered by Plaintiff in its

14

Opposition have no evidentiary value and do not warrant consideration by the Court. See, e.g., Kulhawik v. Holder, 571 F.3d 296, 298 (2nd Cir. 2009) ("An attorney's unsworn statements in a brief are not evidence").

Regardless of Plaintiff's motivation for discontinuing the Article 78 proceeding, the Complaint is silent about what, if any, post-deprivation process was available to Plaintiff under state law. Without alleging any facts about post-deprivation due process protections, the Plaintiff cannot establish such protections were inadequate. Cf. Calley v. Town of Cortlandt, No. 19-CV-5453, 2019 WL 11880434, at *4 (S.D.N.Y. July 8, 2019) (finding plaintiffs failed to assert a violation of their rights to procedural due process because they did not allege the procedures available to them under state law were inadequate).

In sum, the allegations in the Complaint do not establish Plaintiff was entitled to pre-deprivation process or denied post-deprivation process. Accordingly, Defendants' motion to dismiss Plaintiff's procedural due process claim is GRANTED.

C. Conspiracy under Section 1983

To state a claim for conspiracy under Section 1983, a plaintiff must establish by direct or circumstantial evidence: (1) "an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in

15

furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  To survive a motion to dismiss, the factual allegations must plausibly suggest a "meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Jackson v. Nassau County, 552 F. Supp. 3d 350, 381-82 (E.D.N.Y. 2021) (citation and internal quotation marks omitted).  Although conspiracies are, naturally, secretive, a complaint cannot withstand dismissal if it contains only "conclusory, vague, or general allegations that the defendants [] engaged in a conspiracy to deprive the plaintiff of [its] constitutional rights."  Id. at 382 (quoting Ciambriello v. County of Nassau, 292 F.3d 307, 325 (2d Cir. 2002)).  Moreover, to establish an individual defendant's liability in an action pursuant to Section 1983, a plaintiff must allege facts showing the defendant's "personal involvement in the alleged constitutional deprivation."  Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

In a single sentence of the Complaint, Plaintiff alleges that, before entering the Subject Properties, the Individual Defendants "spoke with officers of the SCPD and formulated a plan to shut down" spa businesses owned and operated by individuals of Asian descent.  The Complaint fails to detail when, where, or how the Individual Defendants met with the SCPD before entering the Subject Properties.  The Complaint also does not identify, for

16

example, how many SCPD officers spoke to the Individual Defendants, how long the conversation allegedly lasted, or the extent of each Individual Defendant's participation in this conversation or any other act coordinated with SCPD. Nor does the Complaint contain any allegations about the substance, context, or motivation behind any purported conversation between the Individual Defendants and the SPCD. The absence of such details precludes the Court from determining what, if any, agreement was made between the alleged co-conspirators to inflict an unconstitutional injury. Moreover, the Complaint fails to allege any specific acts taken by the Individual Defendants in furtherance of the supposed conspiracy, instead offering only the conclusory assertion that the Individual Defendants "spoke" to members of the SCPD and planned to unlawfully shut down certain businesses through joint, pretextual inspections.

In its Opposition, Plaintiff states--with no factual or legal support--at the motion to dismiss stage, "a plaintiff need not detail every conversation or overt act." (Opp'n at p. 4.) However, conclusory allegations unsupported by sufficient facts identifying the co-conspirators, their respective roles and involvement in the conspiracy, and how the alleged conspiracy developed, cannot withstand a motion to dismiss. See Sharp v. Town of Greece, No. 09-CV-6452, 2010 WL 1816639, at *7 (W.D.N.Y. May 3, 2010) (finding allegation defendant "took action pursuant

17

to an agreement" insufficient to state a conspiracy claim). Further, nothing in the Complaint plausibly alleges a meeting of the minds between any Defendant and the SCPD or any other co-conspirator. See Jackson, 552 F. Supp. 3d at 382 ("Even when confronted with plausibly alleged constitutional violations, courts routinely dismiss conspiracy claims where the plaintiff fails to allege facts from which a meeting of the minds can be inferred."). Accordingly, Defendants' motion to dismiss Plaintiff's conspiracy claim under Section 1983 is GRANTED.

D. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment "guarantees the right to be free from invidious discrimination in statutory classifications and other governmental activity." Copiague Union Free Sch. Dist., 2017 WL 3017189, at *6. While an equal protection claim may be based on a plaintiff's allegations it was a victim of discrimination stemming from its membership in a protected class, equal protection rights also extend to individuals who allege disparate treatment based on "ill will or without rational basis." Buonanotte v. Noonan, 534 F. Supp. 2d 385, 393 (E.D.N.Y. 2008). A plaintiff that does not allege to be a member of a constitutionally protected class may state an equal protection claim pursuant to one of two theories: "(1) selective enforcement, or (2) class of one." Kirton v. Doe, No. 20-CV-10860, 2024 WL 809904, at *5 (S.D.N.Y. Feb. 27, 2024) (internal quotation

18

marks and citation omitted).  Under either theory, a plaintiff must identify a similarly situated comparator that received differential treatment.  See Hu, 927 F.3d at 93.

To state a "selective enforcement" claim, a plaintiff must show it was (1) subject to selective treatment as compared to others similarly situated, and (2) the selective treatment was caused by impermissible discriminatory motivations such as "malicious or bad faith intent to injure" the plaintiff.  Id. at 91.  To state a "class of one" claim, a plaintiff must allege it was "intentionally treated differently from others similarly situated and . . . there was no rational basis for the difference in treatment."  Id.  For a plaintiff to prevail on a class of one claim, the similarities between the plaintiff and its comparator must be "extremely high," rendering them "prima facie identical." Id.  Thus, a plaintiff must show: (1) its circumstances "cannot rationally be deemed to differ from those of a comparator to a degree that would justify the differential treatment based on a legitimate government policy;" and (2) "the similarity in circumstances and differential treatment sufficiently exclude the possibility that the defendants acted on mistake."  NRP Holdings LLC v. City of Buffalo, 916 F.3d 177, 198 (2d Cir. 2019).  Whether two comparators are similarly situated is generally a question of fact.  See Harper v. Vill. of Hillburn, No. 25-CV-0342, 2025 WL 2653673, at *6 (S.D.N.Y. Sept. 16, 2025).  But at the motion to

dismiss stage, a court must determine whether a jury could plausibly find the comparators similarly situated based on the allegations in the complaint. See id.

The Complaint here is devoid of any allegations identifying a similarly situated comparator who received more favorable treatment than Plaintiff. In fact, the Complaint does not even identify another spa business in the Town or how Defendants navigate relations with these businesses and their commercial lessors. Rather, Plaintiff baldly alleges Defendants unjustly discriminated against Asian-owned spa businesses by targeting them for closure and condemnation without due process, thereby interfering with Plaintiff's right to contract with such Asian-owned businesses in violation of equal protection. These allegations, however, do nothing to explain how Defendants violated Plaintiff's rights as compared to similarly situated lessors contracting with spa businesses, Asian-owned or otherwise.

Put simply, the Complaint fails to allege Defendants treated other similarly situated commercial landlords leasing to spa businesses in Town more favorably than Plaintiff. Without these facts, neither the Court nor a jury can determine if these businesses are similarly situated to Plaintiff for purposes of evaluating its equal protection claim. See Harper, 2025 WL 2653673, at *6 ("[c]onclusory allegations of selective treatment are insufficient to state an equal protection claim" (internal

20

quotation marks omitted)).  Because Plaintiff has failed to allege the existence of a similarly situated comparator, Plaintiff "cannot maintain an equal protection claim under either a selective enforcement or class of one theory."  Viteritti at 136; cf. also Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 60 (2d Cir. 2010) (affirming dismissal of "class of one" Equal Protection claim because plaintiffs failed to allege the purported comparator properties were so similar "no rational person could see them as different").  Thus, Defendants' motion to dismiss Plaintiff's equal protection claim is GRANTED.

III. The Court Denies Leave to Amend the Complaint

Plaintiff failed to request--even in a cursory manner--leave to amend its Complaint.  (See Opp'n, in toto.)  Although leave to amend a complaint may be freely granted, the Court "need not 'grant a request that was not made.'"  McKenzie v. Artists Rts. Soc'y, Inc., 757 F. Supp. 3d 427, 444 (S.D.N.Y. 2024) (quoting Gallop v. Cheney, 642 F.3d 364, 369 (2d Cir. 2011)); see also TechnoMarine SA v. Giftports, Inc., 758 F.3d 493, 505 (2d Cir. 2014) ("A plaintiff need not be given leave to amend if it fails to specify to the district court . . . how amendment would cure the pleading deficiencies in its complaint."); Porat v. Lincoln Towers Cmty. Ass'n, 464 F.3d 274, 276 (2d Cir. 2006) (affirming dismissal of the complaint where counseled plaintiff failed to proffer how the complaint's defects would be cured by amendment);

21

cf. Food Holdings Ltd. v. Bank of Am. Corp., 423 F. App'x 73, 76 (2d Cir. 2011) (affirming denial of leave to amend the complaint where plaintiff made a boilerplate request "on the final page of their brief in opposition to defendants' motion to dismiss . . . without any explanation as to why leave to amend was warranted").

Accordingly, because Plaintiff has failed to properly present or support a request for leave to amend the Complaint, the Court, in its discretion, DENIES leave to amend. See, e.g., McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200 (2d Cir. 2007) ("it is within the sound discretion of the [Court] to grant or deny leave to amend").

CONCLUSION

For the stated reasons, **IT IS HEREBY ORDERED** that Defendants' partial Motion to Dismiss the third, fourth, and sixth causes of action in the Complaint (ECF No. 13) is **GRANTED** in its entirety.[5]

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: May 28, 2026
        Central Islip, New York

---

[5] Because Plaintiff voluntarily abandoned its seventh cause of action for tortious interference with contract and business relations in violation of New York state law, to the extent Defendants sought dismissal of that claim, any such motion for dismissal is moot.

23